UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION<br><br>            Plaintiff,<br><br>        v.<br><br>MONEX DEPOSIT COMPANY, MONEX CREDIT COMPANY, NEWPORT SERVICE CORPORATION, LOUIS CARABINI, and MICHAEL CARABINI,<br><br>            Defendants. | Case No. 17-cv-06416<br><br>Hon. Sharon Johnson Coleman |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TRANSFER VENUE PURUSANT TO 28 U.S.C. § 1404(a)**

**I.    INTRODUCTION**

28 U.S.C. § 1404(a) provides that a case may be transferred from one federal district to another "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* Here, the Commodity Futures Trading Commission ("CFTC") has filed suit in the Northern District of Illinois against Monex Deposit Company (a California partnership located solely in California), Monex Credit Company (a California partnership located solely in California), Newport Service Corporation (a California Corporation located solely in California), Louis Carabini (a California resident) and Michael Carabini (a California resident), for actions based in, and conducted from, Defendants' offices in Newport Beach, California.[1] Monex's business operations, including the sales activity upon which the CFTC bases part of its claim, are all based in Newport Beach,

---

[1] Monex Deposit Company ("MDC"), Monex Credit Company ("MCC") and Newport Service Corporation ("Newport") are referred to collectively as "Monex." Louis and Michael Carabini are collectively referred to as the "Individual Defendants" or "Individuals." Monex and the Individual Defendants are collectively referred to as "Defendants."

California, and nowhere else. And Monex's depository deliveries, relevant to the rest of the CFTC's claims, occur in California or states other than Illinois. Of the customer complainants upon which the CFTC relies for its preliminary injunction motion, four of the ten customers are subject to subpoena power of the court where Defendants are located, the Central District of California (Southern Division); *none* of the ten are subject to the subpoena power of this Court. There are no third-party witnesses identified by the CFTC in support of its preliminary injunction motion that are located in this District or subject to its subpoena power.

This is a California case, not an Illinois case, and it could have, should have, been filed in California. The convenience of the parties and the interests of justice warrant transfer to the United States District Court, Central District of California (Southern Division), where the Defendants are located, where the bulk of the witnesses and documents reside, where the largest number of third-party witnesses are subject to subpoena, and where the nexus of the alleged activity the CFTC seeks to enjoin is based.

## II. STATEMENT OF FACTS

### A. The Complaint alleges no specific Illinois activity but does allege that Defendants are all based in and around Newport Beach, California, and that the nexus of challenged activity is in Newport Beach, California.

The sole basis for venue alleged by the CFTC is that "Defendants transact business in this District and certain transactions, acts, practices, and business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District." (Dkt. No. 1 ¶ 12.) Nowhere does the Complaint specify the "business" Defendants allegedly transact in this District; nowhere does the Complaint state which "certain transactions, acts, practices and business" occurred in this District. In contrast, the Complaint specifically alleges that all Defendants are located in California and that the three entities comprising Monex are "located in the same building [in]

2

Newport Beach, California." (*Id.* ¶ 14.) Likewise, the Complaint alleges that both the individual defendants are California residents. (*Id.*)

All of the Complaint's allegations regarding what either Monex or the Individual Defendants are alleged to have done are likewise based in California — no other location is offered for the nexus of Defendants' activities: Newport Beach-based MDC is alleged to solicit retail customers using a Newport Beach-based sales force; Newport Beach-based MCC is alleged to provide loans, accept funds, extend credit and issue account statements; Newport Beach-based Newport is alleged to provide administrative services (from Newport Beach) to MDC and MCC. (*Id.* ¶ 15.) Likewise, the California-based Individual Defendants are alleged to have founded and/or oversaw the operations of Monex, including signing on Monex accounts, hiring and firing California-based employees, and coordinating advertising, marketing and website content from California. (*Id.* ¶ 16.) There are no District-specific or District-directed actions or activities identified on the face of the Complaint.

> **B.** **The Defendants business activities are based in Newport Beach, California and there is *de minimus* activity related to this District.**

The CFTC is correct that Defendants' activities related to the sales and financing transactions, as well as the delivery and titling of metals, are based, managed and coordinated entirely in and from Newport Beach, California. (*See generally* Declaration of Louis Carabini ("Carabini Declaration" or "Carabini Decl."), Exhibit A hereto.) In particular, all management of Monex is based in Newport Beach. (Carabini Decl. ¶ 8.) Monex has no other offices. (*Id.*) All of Monex's employees, including its sales team, are based in Newport Beach, and all employees reside in California. (*Id.*) In particular, the sales representatives buy and sell precious metals from Newport Beach. (*Id.* ¶ 10.) Monex's data servers are located in Newport Beach, as are Monex's hard copy and electronic customer files; older paper copies of Monex's customer files

3

and computer backups are stored offsite in a nearby facility. (*Id.* ¶ 16.) Monex's advertising is also based out of Newport Beach. (*Id.* ¶ 12.)

Monex has no material focus on, or relationship with, Illinois or this District. Monex is not registered to do business in Illinois (*Id.* ¶ 9.) Monex engages in no Illinois-specific advertising. (*Id.* ¶ 12.) Monex does no "cold-calling" in Illinois or elsewhere; Monex's sales contacts are created solely through being contacted by potential customers, contacting past customers, or referrals from existing customers. (*Id.* ¶ 13.) MDC has customers in every U.S. state and territory, including Illinois. (*Id.* ¶ 11.) Regarding the financing transaction at issue in the Complaint, MCC issues loans to customers in nearly every state and territory, and only approximately 2.75 percent of such loans are issued to Illinois customers. (*Id.* ¶ 14; *see also* Dkt. No. 8-1 at PageID #159.) By comparison, the largest concentration of Monex loans are to California customers, with approximately 20 percent of Monex's loans issued to California customers. (*Id*.) Other than Monex having a small percentage of its total finance transaction customers in Illinois, MCC maintains a bank account in Chicago where certain Monex customer funds are deposited and then, on a routine basis, swept to other Monex bank accounts outside Illinois. (Carabini Decl. ¶ 17.)

    **C.**  **The documents and potential witnesses are principally located in California.**

As noted, all of Monex and the Individual Defendants' business activities are based in Newport Beach, and the related data and documents are based there as well. Indeed, the materials that Monex has already produced to the CFTC originated from its office in Newport Beach.

Newport Beach, and the Central District of California more generally, is the location for the vast majority of potential witnesses. The CFTC has conducted investigatory depositions of eight Monex employees, all of whom reside in California within the Central District and all of

4

whom were deposed in California — Louis and Michael Carabini, Brian Jenkins, Harvey Kochen, David Gala, Darrell Hamilton, Michael Maroney, and Ron Smoler. Likewise, the CFTC deposed a representative from one of the third-party precious metals depositories, Farmers & Merchants employee Thomas Sauchelli, based in Irvine, California, also within the subpoena power of the Central District. The CFTC took three separate trips to California to complete this set of investigatory depositions; and excerpts of almost all of these witnesses are cited in the appendix supporting the CFTC's preliminary injunction motion. While this case has just been filed and Monex is only beginning to initiate discovery, Monex anticipates that all of these witnesses may be called at any trial or preliminary injunction hearing to testify.

      The CFTC has provided ten customer declarations in support of its preliminary injunction motion. (Dkt. No. 9-1 to Dkt. No. 9-10.) Of those ten, none reside in Illinois and none are within the subpoena power of this District. Consistent with Monex having its highest concentration of customers in California, four of the ten customers the CFTC selected to support its preliminary injunction motion — 40 percent — reside within the subpoena power of the Central District of California (Iman Bar, Newport Beach; Candice Hubert, Newport Beach; Sheena Liu, San Marcos, CA; Elisa Pugliese, Los Angeles). Monex anticipates potentially calling each of these witnesses at any hearing or trial to challenge the testimony offered in their declarations in this matter.[2] Conversely, of the testimony the CFTC has introduced to support its preliminary injunction motion, only one, CFTC employee Jeffery Gomberg, may reside in this District.

---

[2] Likewise, because Monex has its highest percentage of customers in California, a California court offers Monex the greatest opportunity to subpoena additional customer witnesses to testify regarding their experiences with Monex.

**III. ARGUMENT**

Because California — specifically Newport Beach — is the hub of material witnesses, records, documents, and access to other sources of evidence, is substantially more convenient for all five Defendants, is the only District where there is a concentration of third-party witnesses, and, most importantly, is where all material events relevant to the Complaint's allegations occurred, this case should be transferred to the Central District of California.

**A. Legal Standard: The Court has substantial discretion to transfer this action to the Central District of California.**

The Court has substantial discretion to transfer this action based on the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010) ("[W]e grant a substantial degree of deference to the district court in deciding whether transfer is appropriate."). A transfer is appropriate under § 1404(a) if the moving party demonstrates that "(1) venue was proper in the transferor district; (2) venue and jurisdiction would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *Simonian v. Monster Cable Prod., Inc.*, 821 F. Supp. 2d 996, 998 (N.D. Ill. 2010). This statute provides a Court with discretion to order a transfer "according to an individualized, case-by-case consideration of convenience and fairness." *Consumer Fin. Prot. Bureau v. Golden Valley Lending, Inc.*, No. 17 C 3155, 2017 WL 3970514, at *1 (N.D. Ill. Sept. 8, 2017) (quoting *Stewart Org., Inc. v Ricoh Corp.*, 487 U.S. 22, 29 (1988)).[3] The convenience of the parties and witnesses and the interests of justice are served here by a transfer to the Central District of California.

---

[3] All unreported decisions are attached collectively as Exhibit B.

6

**B. Transfer is warranted under Section 1404(a) because this action could have been and should have been filed in the Central District of California.**

The Court must first determine whether the new venue is proper in its own right; without question this case could have been brought in the Central District of California. Under the applicable venue provision of the Commodities Exchange Act ("CEA"), venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur[.]" Section 6c(e) of the CEA, 7 U.S.C. § 13a-1(e). The Central District satisfies this venue provision in full. All Defendants are found in, are inhabitants of, and transact business in the Central District. Most importantly, the nexus of "the act or practice" the CFTC seeks to enjoin is, by the CFTC's own admission, located in the Central District of California. The first factor of the Section 1404 analysis — that venue and jurisdiction would be proper in the transferee district — is satisfied.

**C. Transfer is warranted under Section 1404(a) because the Central District of California is the more convenient venue for the parties and witnesses.**

In evaluating the "convenience of the parties and witnesses" courts consider the situs of material events, the relative ease of access to sources of proof, the convenience of the witness (in particular, third-party witnesses), the convenience of the parties, and the plaintiff's choice of forum. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (quoting *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000)). As set forth below, these factors favor transfer to the Central District of California.

**i. The "situs of material events" is without question California.**

The situs of material events "should be accorded substantial weight when considering a transfer of venue." *A.M. Castle & Co. v. Byrne*, No. 13-CV-4835, 2013 WL 5511673, at *3

7

(N.D. Ill. Oct. 3, 2013) (J. Coleman). Here, this factor weighs overwhelmingly in favor of transfer to the Central District of California.

Here, the conduct at issue is Defendants' advertising, sale, and financing of precious metals through its Atlas program, as well as whether Defendants have effectuated "delivery" of the metals in the Atlas program. All decisions regarding the Atlas program were made at Defendants' office in Newport Beach. The sales, advertising, website, marketing communications and customer statements for the Atlas program all are based in, or originate from, Defendants' Newport Beach location. (Carabini Decl. ¶¶ 8, 10 and 12.) And, to the extent that the CFTC alleges that the Individual Defendants exerted "control" over Monex, that activity, too, is based in Newport Beach, where those individuals and Monex are located. Any and all relevant decisions and actions by Defendants related to this action occurred in Newport Beach. As such, this factor weighs heavily in favor of transfer. *Jaramillo,* 664 F. Supp. 2d at 914 ("The conduct which is the focus of this suit is decisions by Defendants to market and sell . . . items . . . . not the purchases by Plaintiffs. The relevant decisions would have been made by employees of the Defendants at a headquarters office[.]"); *see also Simonian,* 821 F. Supp. 2d at 998 (product was designed and approved from office in transferee district).

Furthermore, Illinois is clearly *not* the situs of the material events that give rise to this litigation. While some of MDC's customers and MCC's borrowers do reside in Illinois, they also reside in nearly every other state. (Carabini Decl. ¶¶ 11, 14.) As noted, only approximately 2.75 percent of MCC's borrowers are in Illinois, compared to the approximately 20 percent in California. (*Id.* ¶ 14; Dkt. No. 8-1 at PageID #159.) Illinois has no special connection to this case. *See Golden Valley Lending, Inc*., 2017 WL 3970514, at *2 ("The problem with this argument is that the CFPB admits that Defendants' borrowers also reside in 16 other states

besides Illinois, meaning that these states are also part of the 'situs of material events.' In other words, there is nothing special about Illinois for this case.");[4] *FTC v. Acquinity Interactive, LLC*, No. 13 C 5380, 2014 WL 37808, at *2 (N.D. Ill. Jan. 6, 2014) (FTC failed to allege that defendant's actions had a greater impact in its chosen district than anywhere else). Further, it is well-settled that "sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*, No. 11-CV-7992, 2013 WL 951115, at *2 (N.D. Ill. Mar. 11, 2013) (J. Coleman) (quoting *Body Sci. LLC v. Boston Sci. Corp.*, 846 F.Supp.2d 980, 992 (N.D. Ill. 2012)). That is exactly the case here.

### ii. California is more convenient for the witnesses.

The convenience of the witnesses is considered among the most important factors in the "convenience of the parties and witnesses" prong of the transfer analysis. *A.M. Castle*, 2013 WL 5511673, at *4 ("The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer.") (internal citations omitted). The vast majority of party and party-affiliated witnesses that both Defendants and the CFTC will likely call in any hearing or trial are all based in California, as evidenced by the fact that seven of the eleven investigative witnesses for which the CFTC chose to submit testimony in support of its preliminary injunction motion are based in and around the Central District of California.

Further, and even more importantly, the Central District is the most convenient forum for the third-party witnesses identified to date. Four of the ten customer witnesses the CFTC has identified reside within the subpoena power of the Central District of California, as does an

---

[4] The *Golden Valley* court also recognized that "[c]ourts generally give greater weight to the convenience of already identified witnesses." 2017 WL 3970514, at *2. As noted here, none of the CFTC's identified alleged victims reside in Illinois, while four of the ten reside in or around Newport Beach, California.

9

additional third-party witness who works for one of the depositories holding the precious metals at issue. Conversely, none of the third-party witnesses identified by the CFTC reside in, or have any connection to, Illinois, and Defendants likewise do not anticipate seeking testimony from any third-parties in this District. The largest group of third-party witnesses, just like the largest group of party witnesses, resides in the Central District of California and outside the subpoena power of this District. This factor weighs heavily in Defendants' favor and against the CFTC as "the existence of significant third-party witnesses outside the particular forum's subpoena power can be a significant factor in the section 1404(a) analysis." *Acquinity Interactive, LLC*, 2014 WL 37808 at *3. Further, because the largest portion of Monex's customers reside in California, Monex will be able to subpoena additional witnesses more easily in California than in Illinois.

### iii. Sources of proof are easily accessed in California.

All of Defendants' documents are maintained in California. The customer files are stored in electronic and hard copy at the Newport Beach office and nearby storage locations. (Carabini Decl. ¶ 16.) While the ability to access electronic information from anywhere generally makes this factor neutral, the location of physical or hard copy evidence may favor transfer. *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013) (the "overwhelming presence of both electronic and physical evidence in the Western District of Washington" favored transfer).

Defendants will, of course, be seeking discovery from the CFTC, but that factor is at best neutral, since the CFTC is based in Chicago and, relevant to Defendants' anticipated discovery, Washington, DC. Further, Defendants will seek third-party discovery from the numerous third-party witnesses that are located in California generally and in the Central District in particular. As between this District and the Central District of California, the Central District is the more favorable forum for ease of access to sources of proof.

### iv. California is more convenient for the parties.

The Central District of California is clearly a more convenient forum for Defendants — as admitted by the CFTC all Defendants are based in, or reside near, Newport Beach. While the CFTC personnel bringing this action are based in Chicago, the CFTC has the authority to pursue actions across the country, which argues against this District being a convenience factor in favor of the CFTC. *CFTC v. Delay*, No. 05 C 5619, 2005 WL 2810755, at *3 (N.D. Ill. Oct. 25, 2005) ("The Commission, on the other hand, has the authority to pursue actions such as this across the country and has not shown that it would be any particular hardship to litigate the instant action in Nebraska."). Additionally, during the CFTC's years-long investigation of Defendants before bringing suit, the same CFTC lawyers who filed the Complaint traveled to California multiple times to take the investigative testimony of Defendants and their employees.

Further, the CFTC has brought numerous cases on the west coast, including several in the Central District of California. *See e.g. CFTC v. Intelligent Trades, LLC*, No. 8-16-cv-000200-AG-DFM (C.D. Cal.); *CFTC v. Metters*, No. 2:14-cv-06542-R-MRW (C.D. Cal.); *CFTC v. Am. Bullion Exch. ABEX Corp.*, No. 8:10-cv-01876-DOC-KES (C.D. Cal.).[5] Indeed in approximately 70 percent of the CFTC initiated cases cited in the CFTC's memorandum in support of its preliminary injunction motion, the CFTC filed the underlying action in the domicile of the defendants. Likewise, a review of all enforcement actions in the last two years listed on the CFTC's website suggests that up to 70 percent of those cases were also filed by the CFTC in the domicile of the defendants. CFTC Press Releases, http://www.cftc.gov/PressRoom/PressReleases/index.htm (last visited Sept. 29, 2017). The CFTC thus routinely brings the majority of its actions in the federal district where the defendant

---

[5] The complaints in each of these matters are attached collectively as Exhibit C.

11

is found; this case is an anomaly, and the Complaint provides no explanation why the CFTC chose Illinois rather than California. The CFTC's practice of bringing cases where the defendant is incorporated or had an office "at least hints [the] CFTC derives little added convenience from trying a case in a district (such as this one) in which *it* has an office but the defendant does not." *CFTC v. First Nat. Monetary Corp.*, 565 F. Supp. 30, 32 (N.D. Ill. 1983) (emphasis in original).

> **v. The CFTC's choice of forum should be given little weight because this District lacks any significant connection to the cause of action.**

A plaintiff's choice of forum should be given little deference when it lacks any significant connection to the cause of action. *Acquinity Interactive, LLC*, 2014 WL 37808, at *2; *Sutton v. Apple Inc.*, No. 10-CV-08176, 2011 WL 2550500, at *3 (N.D. Ill. June 23, 2011) (J. Coleman) ("The weight given to plaintiff's choice of forum is lessened on a motion to transfer venue if the chosen forum has a relatively weak connection with operative facts giving rise to the claim."). Here, all of Defendants' challenged conduct occurred in, or originated from, their Newport Beach office. This action's only connection to this District beyond that Monex has a handful of customers here (as it does throughout the country) is that the CFTC personnel investigating and bringing this action are based in Chicago office. And, even so, a material part of the CFTC's investigation still took place in California, where the CFTC traveled on at least three separate occasions to take nine investigative depositions during its investigation.

The law is clear that even where this District is a regulatory agency's "home forum," the selection of such a forum "carries less weight" where, as here, "the only real connection between the lawsuit and this district is that some of the alleged consumer injury occurred here." *Acquinity Interactive, LLC*, 2014 WL 37808, at *2. The Commission's decision to bring suit where it has an office and Defendants do not deserves little deference. *First Nat. Monetary Corp.*, 565 F.

12

Supp. at 32; *see also Delay*, 2005 WL 2810755, at *3 (noting that the Commission "has the authority to pursue actions such as this across the country[.]").

### B. Transfer is warranted under Section 1404(a) because the interests of justice are best served by transfer to the Central District of California.

Not only is the Central District of California a more convenient venue for the parties and witnesses, transfer to that district would better serve the interests of justice. In evaluating the interests of justice, the Court looks to "(1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law[6]; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue." *Nalco Co. v. Envtl. Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010). The interests of justice factors — in particular the desirability of resolving this controversy in California and California's relation to this action, given that all of the Defendants and the greatest number of alleged injured customers both reside there — overwhelmingly favor transfer.

### i. Statistics demonstrate that the case will proceed to trial, or other disposition, more quickly in the Central District of California.

To analyze the speed to trial factor, the Court relies on the Federal Court Management Statistics. *R&Q Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, No. 15-CV-7784, 2016 WL 1247478, at *3 (N.D. Ill. Mar. 30, 2016) (J. Coleman). Based on those statistics, the matter is likely to be resolved in nearly half the time in the Central District of California compared to the Northern District of Illinois. In this Court, the average time from filing to trial is 40 months, and from filing to disposition is 8.2 months. In contrast, the average time from filing to trial in the Central District of California is 20 months, and only 4.8 months from filing to disposition. *See*

---

[6] This factor is neutral when, as here, a case is based on federal law. *Craik,* 37 F. Supp. 3d at 963; *Acquinity Interactive*, *LLC,* 2014 WL 37808, at *4. This factor thus has no impact on the transfer analysis.

13

Untied States District Courts - National Judicial Caseload Profile, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2017.pdf (last visited Sept. 27, 2017). Further, "common sense suggests that the litigation will move more quickly in a venue close to key witnesses and evidence, and where such witnesses are within the court's subpoena power." *Andrade v. Chase Home Fin., LLC*, No. 04 C 8229, 2005 WL 3436400, at *9 (N.D. Ill. Dec. 12, 2005). As discussed above, the greatest concentration of party and non-party witnesses are located in California.

### ii. California has a significant connection to this action and it should be resolved in California not Illinois.

The desirability of resolving a controversy in its locale and the relationship of the community to the controversy are often given "a great deal of weight." *Jaramillo*, 664 F. Supp. 2d at 917 (N.D. Ill. 2009). They go to the heart of the "interests of justice" prong of the transfer analysis — what interest in, and connection to, the controversy does each respective venue have. Here, there is no question that it is California and not Illinois with the greatest interest in this action. In determining which court should resolve the controversy, courts take into account that courts have an "interest in resolving the underlying dispute that affects its companies and citizens who are named as defendants." *Acquinity Interactive, LLC*, 2014 WL 37808, at *5; *see also Craik*, 37 F. Supp. 3d at 963–64 ("[T]he interest of justice is better served when a forum contains a community that has a strong desire to resolve a particular dispute and that has an invested stake in the matter such that the venue is 'closer to the action.'"). Likewise, the state that is "an alleged nexus of the defendants' behavior and business dealings" and where "a good deal of the underlying conduct that [is challenged] took place" "has a significant interest in resolving [the] dispute." *Acquinity Interactive, LLC*, 2014 WL 37808, at *5. Here, that state is admittedly and unquestionably California, not Illinois.

14

The Defendants are all based in and around Newport Beach and the nexus of the CFTC's allegations is Newport Beach; the CFTC cannot claim otherwise. Likewise, based on the CFTC's own evaluation, the largest number of purportedly injured customers are based in California. In *Acquinity*, the fact that the defendant and the "alleged nexus of the defendants' behavior and business dealings" were in Florida and not Illinois was dispositive in that court's "interests of justice" analysis. 2014 WL 37808, at *5; *see also Judge v. Unigroup, Inc.,* No. 16 CV 6884, 2017 WL 345561, at *4 (N.D. Ill. Jan. 24, 2017) (J. Coleman) ("Florida has the greater interest in resolving issues that affect one of its residents and implicate actions of two Florida based agent moving companies, at least as they may be called as third-party witnesses."). The nexus of this action to California should be dispositive of the "interests of justice" analysis here as well.

## IV. CONCLUSION

The people of California and the court based there — the Central District of California (Southern Division) — should be afforded the opportunity to adjudicate the CFTC's claims against the California companies and individuals named as defendants in this case. The vast majority of witnesses reside in the Central District. The Central District is the only place where the most third-party witnesses are subject to subpoena. No state but California has as high an interest in this action — the nexus of the CFTC's claims is based in California and, if the CFTC is to be believed, no state has a greater percentage of alleged "victims" than California. This case presents the precise set of circumstances for which Section 1404 empowers courts to transfer actions and this Court should do so here.[7]

---

[7] Defendants' Motion to Transfer Venue is being filed without prejudice to Individual Defendants' right to challenge personal jurisdiction in the event that the Motion to Transfer is denied, and Individual Defendants expressly reserve their right to do so.

15

Dated: October 3, 2017

Respectfully submitted,
MONEX DEPOSIT COMPANY, MONEX CREDIT COMPANY, NEWPORT SERVICE CORPORATION, LOUIS CARABINI, AND MICHAEL CARABINI

By: */s/ Steven L. Merouse*
       One of their Attorneys

Stephen J. Senderowitz
Steven L. Merouse
Jacqueline A. Giannini
Marilyn B. Rosen
Geoffrey M. Miller
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
Tel: +1 312 876 8000
stephen.senderowitz@dentons.com
steven.merouse@dentons.com
jacqui.giannini@dentons.com
marilyn.rosen@dentons.com
geoffrey.miller@dentons.com

Michael S. Kim
Andrew C. Lourie
Matthew I. Menchel (*pro hac vice*)
Benjamin J.A. Sauter (*pro hac vice*)
KOBRE & KIM LLP
111 W. Jackson Blvd., 17th Floor
Chicago, Illinois 60604
Tel: +1 312 429 5100
Michael.Kim@kobrekim.com
Andrew.Lourie@kobrekim.com
Matthew.Menchel@kobrekim.com
Benjamin.Sauter@kobrekim.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2017, I electronically filed ***Defendants' Memorandum of Law in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)*** with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel who have appeared in this matter.

By: */s/ Steven L. Merouse*
One of the Attorneys for Defendants